## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

HETRICK COMPANIES LLC and )
PHILIPPE HETRICK, )
    **Plaintiffs,** )
     )       **Case No. 1:23-cv-961**
    **v.** )
     )
IINK CORP., )
    **Defendant.** )

### Memorandum Opinion

This matter is before the Court on Defendant IINK Corp.'s motion to transfer venue or, in the alternative, to compel arbitration and dismiss the complaint (Dkt. 13). A careful review of the record reveals (i) that there is a valid and enforceable arbitration agreement between Plaintiff Hetrick Companies LLC and IINK Corp. and (ii) that each of Hetrick Companies' claims are within the scope of that agreement. However, because the parties agreed to arbitrate in Tampa, Florida, and because district courts may not compel arbitration outside of their respective districts,[1] Hetrick Companies' claims must be transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). But Plaintiff Philippe Hetrick is not bound to the arbitration agreement because he is not a signatory to that contract, and the § 1404(a) factors do not favor transfer of his claim. Philippe's claim must accordingly be severed and retained in this District. For these reasons, Defendant's motion is granted in part and denied in part.

### I.

The relevant alleged facts can be summarized as follows:

---

[1] *See* 28 U.S.C. § 4.

1

- Plaintiff Hetrick Companies LLC ("HetCo") is a Virginia limited liability company with its principal place of business in Virginia. Plaintiff Philippe Hetrick ("Philippe") is a resident of Virginia and the sole member of HetCo. Compl. ¶¶ 1–2, 5 (Dkt. 1).

- HetCo advocates for customers filing insurance claims. As part of its business, HetCo often receives checks from insurers on behalf of HetCo clients. Compl. ¶¶ 6–7.

- Approximately 60–80% of HetCo's 2022 revenue came from two clients, Shanco Companies LLC ("Shanco") and Feazel, Inc. ("Feazel"). Compl. ¶ 10.

- Feazel is a roofing and home exterior company with offices in Ohio, Indiana, and North Carolina.[2] Shanco is a roofing and home exterior company that operates in D.C., Maryland, and Virginia, with a principal place of business in Maryland.[3] Plaintiffs allege that Shanco is either a subsidiary of Feazel or enjoys a similarly close business relationship. Compl. ¶ 9.

- Defendant IINK Corp. ("IINK") is a Delaware corporation with its principal place of business in Florida. IINK is a payment endorsement company that allows individuals to endorse and distribute digitally insurance claim checks. Electronic endorsement and distribution leads to timelier payment of funds. Compl. ¶ 11.

- On August 22, 2022, HetCo contracted with IINK to use IINK's services to process payments on behalf of HetCo's clients. The contract was signed by Philippe Hetrick on behalf of HetCo. Compl. ¶ 12; Mot. Ex. 2 at 2–3 (Dkt. 13-3) (hereinafter, the "Agreement").

- The Agreement contains an arbitration clause, which requires that "all claims or disputes arising out of or relating to the Services" provided by IINK be decided by arbitration in Tampa, Florida. The Agreement states that it is governed by the Federal Arbitration Act ("FAA") and Florida law. Agreement §§ 12.9–12.10.

- In June 2023, HetCo alerted IINK to a suspicious bank account listed on HetCo's online dashboard. IINK initiated an investigation of the matter. Compl. ¶¶ 14–15, 17.

- As part of its investigation, IINK accessed HetCo's confidential records and disclosed those records to employees of Feazel. The disclosure included information on HetCo

---

[2] A review of the Ohio Secretary of State's business registration indicates that Feazel, Inc. is a trade name that is no longer registered in Ohio as of May 2023. Feazel Roof LLC is an Ohio limited liability company and Feazel Roofing, LLC is a Delaware limited liability company registered to do business in the state of Ohio. *See* https://businesssearch.ohiosos.gov/. It appears that one of these businesses is the entity referenced in Plaintiffs' complaint, though nothing turns on which entity is Plaintiffs' client.

[3] *See* State Corporation Commission Clerk's Information System, available at https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=11370860.

clients unrelated to Feazel or Shanco. IINK also made a series of defamatory statements about HetCo and Philippe that, among other things, implicated Plaintiffs in hacking operations, sanctions violations, identity theft, and fraud. Compl. ¶¶ 18–25.

- In July 2023, Feazel froze all contracts between Shanco and HetCo. HetCo has had no commercial transaction with either Feazel or Shanco since that time. Compl. ¶ 26.

On July 21, 2023, HetCo and Philippe (together, "Plaintiffs") filed the instant action, alleging (i) violation of the Stored Communications Act, 18 U.S.C. § 2702 *et. seq.*, (ii) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et. seq.*, (iii) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.*, (iv) common law defamation, (v) misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act, Va. Code § 59.1–336 *et seq.*, and (vi) common law intentional interference with business relations. Although all six claims are raised by HetCo, Philippe's only claim in this action is for defamation. On September 29, 2023, IINK moved to transfer this matter to the Middle District of Florida, Tampa Division, to allow that court to compel arbitration. In the alternative, IINK seeks an order compelling arbitration and either dismissing the complaint or staying the proceedings.

## II.

The Federal Arbitration Act provides that:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This provision creates "a body of federal substantive law of arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under this federal substantive law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *id.* at 24–25, reflecting "an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr. v. Brown*, 565 U.S. 530, 533 (2012) (quoting *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). However, arbitration must be contracted for, and courts apply ordinary state law contract principles to determine whether a valid arbitration agreement exists. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The FAA "provides two parallel devices for enforcing an arbitration agreement," namely, a stay of litigation under Section 3 and an order compelling arbitration under Section 4. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22. Thus, where a claim is "referable to arbitration" pursuant to a valid and enforceable agreement between the parties, a court must "on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.[4] Additionally, if a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," then "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

To compel arbitration under Section 4 of the FAA, a movant must demonstrate (i) a dispute between the parties, (ii) an agreement to arbitrate the dispute, (iii) a relationship of the transaction to interstate or foreign commerce, and (iv) a failure, neglect, or refusal of the opposing party to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). If these elements are shown, a district court must enter an order "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding whether to compel arbitration, courts must "engage in a limited review to ensure that the dispute is arbitrable–*i.e.*, that

---

[4] Although § 3 only references a stay, the Fourth Circuit has held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).

a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the scope of that agreement." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999).

Finally, the legal standard to be applied when ruling on a motion to compel arbitration is similar to the standard applied at summary judgment. A court "may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quotation marks omitted). The pleadings and "all relevant, admissible evidence submitted by the parties" are considered and "all reasonable inferences" are drawn in favor of the non-moving party. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quotation marks omitted).[5] If "the making of the arbitration agreement or the failure, neglect, or refusal to [arbitrate] be in issue," then a court must "proceed summarily to [] trial." 9 U.S.C. § 4.

## III.

To compel arbitration, IINK must show that the parties have agreed to arbitrate this dispute. *See Zandford v. Prudential-Bache Sec., Inc.*, 112 F.3d 723, 726 (4th Cir. 1997).[6] The parties' briefing reveals six issues to be resolved: (i) whether a valid arbitration agreement exists between both Plaintiffs and IINK; (ii) whether Plaintiffs' claims fall within the parameters of the arbitration

---

[5] *See also SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013); *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 743 (8th Cir. 2014); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014); *Jin v. Parsons Corp.*, 966 F.3d 821, 826–27 (D.C. Cir. 2020) (all adopting the same standard).

[6] The other three *Adkins* factors are not contested. First, there is plainly a dispute between the parties. Second, the Agreement is "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Fourth Circuit has held that a contract between a Delaware corporation and a Virginia corporation establishes a sufficient interstate nexus to satisfy the FAA. *See Am. Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 963 (4th Cir. 1980). The contract here involves the provision of services from a Delaware corporation headquartered in Florida to a Virginia LLC. And third, Plaintiffs have refused to arbitrate.

clause; (iii) whether the arbitration agreement is unenforceable as an "infinite arbitration provision;" (iv) whether the FAA is unconstitutional in light of the Seventh Amendment; (v) whether, if there is a valid and enforceable agreement to arbitrate, this court may compel arbitration; and (vi) whether any or all claims in this action should be transferred to the Middle District of Florida pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). Each of these issues is addressed in turn.

### A.

To arbitrate a dispute, there must first be a valid arbitration agreement between the parties. The validity of an arbitration agreement is determined "according to state law principles governing contract formation." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020). Here, the parties included a choice of law clause in the contract specifying that "the Agreement and any claims relating to its subject matter shall be governed by and construed in accordance with the internal laws of the State of Florida." Agreement § 12.9.[7] Thus, Florida law governs.

Under Florida law, a contract is formed when there is offer, acceptance, consideration, and specification of the essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). The party seeking enforcement of an arbitration agreement has "the burden of establishing an enforceable written" contract to arbitrate. *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th Dist. Ct. App. 2017). Here, IINK has offered a valid written contract signed electronically by Philippe on behalf of HetCo. Under Florida law, an "electronic signature

---

[7] Choice of law provisions are not self-executing; Florida law governs only if the choice of law clause itself is valid and enforceable. The conflict of laws rules of the state of Virginia control the validity of the parties' choice of law clause. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Virginia has long "look[ed] favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citing *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943)); *see Union Cent. Life Ins. Co. v. Pollard*, 26 S.E. 421, 422 (1896). There are no unusual circumstances here; therefore, there is no bar to application of Florida law.

is valid," and "one who signs a contract is presumed to know and agree to its terms." *CEFCO v. Odom*, 278 So. 3d 347, 354 (Fla. 1st Dist. Ct. App. 2019). IINK has therefore shown a valid arbitration agreement, and Plaintiffs do not contest the validity or enforceability of the contract as applied to HetCo. However, Plaintiffs assert that the arbitration agreement is inapplicable to Philippe as he was not a party to the Agreement. Because an arbitration agreement is simply a contract, no party can be compelled to arbitrate if they have not previously agreed to do so. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Philippe signed the Agreement in his capacity as owner of Hetrick Companies, not in his personal capacity. *See* Agreement at 2. Therefore, it must be determined whether Philippe is bound to the contract.

## 1.

Before assessing whether Philippe is contractually bound, there is an important, antecedent question: what body of contract law, federal or state, should be applied to make that determination. Although ordinary state law principles govern the formation of contracts, the "federal substantive law of arbitrability [is] applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Thus, the Fourth Circuit has instructed that "the determination of whether . . . a nonsignatory[] is bound by [an arbitration] contract presents no state law question of contract formation or validity" but is instead governed by the "federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000). Under that federal substantive law, "in an appropriate case a nonsignatory can enforce, *or be bound by,* an arbitration provision within a contract executed by other parties." *Id.* at 416–17 (emphasis added).

But subsequent Supreme Court precedent has cast serious doubt on the vitality of *Int'l Paper Co*. *See Meridian Imaging Sols., Inc. v. OMNI Business Sols. LLC*, 250 F. Supp. 3d 13, 22

(E.D. Va. 2017) (noting but not ultimately reaching or resolving the issue). In *Arthur Andersen LLP v. Carlisle*, the Supreme Court held that while Section 2 of the FAA "creates substantive federal law regarding the enforceability of arbitration agreements," neither it nor Section 3 "purports to alter background principles of state contract law regarding the scope of the agreements," including "who is bound by them." 556 U.S. 624, 630 (2009). Rather, "traditional principles of state law" govern whether an arbitration agreement can be "enforced by or against nonparties to the contract." *Id.* at 631. Thus, "a litigant who was not a party to the relevant arbitration agreement may invoke [Section] 3" only if "the relevant state contract law allows him to enforce the agreement." *Id.* at 632. The Supreme Court also explained the interoperability of federal and state law, noting that "[i]f a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law" then the claim is "referable to arbitration" as a matter of federal law. *Id.* at 631.

Every Circuit to have issued binding precedent post-*Arthur Andersen* has held that the applicable state law of contract decides whether an arbitration agreement may be enforced by or against nonparties, often overruling earlier decisions that such questions were matters of federal common law.[8] The Fourth Circuit has not expressly addressed *Arthur Andersen*'s effect on its

---

[8] *See Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 12 n.26 (1st Cir. 2014); *Doe v. Trump Corp.*, 6 F.4th 400, 411–12 & n.8 (2d Cir. 2021) (noting that state law ordinarily should apply but applying federal common law on the basis of waiver); *White v. Sunoco, Inc.*, 870 F.3d 257, 262–63 & n.4 (3d Cir. 2017); *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255 (5th Cir. 2014); *AtriCure, Inc. v. Meng*, 12 F.4th 516, 520 (6th Cir. 2021); *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752–53 (7th Cir. 2017); *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731–32 (8th Cir. 2009); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293 (10th Cir. 2017); *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011); *but see Setty v. Shrinivas Sugandhalaya LLP*, 986 F.3d 1139, 1141–42 (9th Cir.), *withdrawn on denial of reh'g en banc*, 998 F.3d 897 (9th Cir. 2021) (holding in a now-vacated opinion that the arbitrability of claims by or against nonsignatories to an arbitration agreement is governed by federal substantive law if federal claims are asserted and state law if only state-law claims are asserted).

precedent. After *Arthur Andersen*, the Fourth Circuit continued to apply its earlier line of cases that looked to federal substantive law. *See, e.g.*, *Aggaro v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355. 373–74 (4th Cir. 2012). But in a recent opinion, the Fourth Circuit held that *Arthur Andersen* requires courts to look to "the relevant state contract law" to determine if a nonparty to an arbitration agreement may enforce that agreement. *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 287–88 (4th Cir. 2023). *Rogers* did not overrule or discuss contrary Fourth Circuit precedents looking to federal law. Although the Fourth Circuit has not expressly abrogated its earlier line of decisions, given the Supreme Court's command in *Arthur Andersen*, the unanimous opinion of the courts of appeals, and the irreconcilability of the internal Fourth Circuit caselaw, state—not federal—law should govern whether a nonsignatory is bound to an arbitration agreement. Thus, whether Philippe is bound to the Agreement must be resolved according to Florida law.

## 2.

Under ordinary contract principles, "[t]hird persons who are not parties to an arbitration agreement generally are not bound by the agreement." 21 Williston on Contracts § 57:19, at 181 (4th ed. 2001). However, Florida courts have held that nonsignatories to an arbitration agreement may enforce or be bound to that agreement under theories of (i) incorporation by reference, (ii) assumption, (iii) piercing the corporate veil/alter ego, (iv) third party beneficiary, (v) agency, and (vi) equitable estoppel. *See Liberty Commc'n, Inc. v. MCI Telecomms. Corp.*, 733 So. 2d 571, 574 (Fla. 5th Dist. Ct. App. 1999); *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 149–50 (Fla. 2016). Two these theories are inapplicable to the facts of this case. Another two of these theories may be easily rejected. And none of these theories binds Philippe to the Agreement.

**a.**

First, there is no agreement between Philippe and IINK on which to find incorporation by reference. Incorporation by reference arises when a signatory to an arbitration agreement enters a separate contractual relationship with a nonsignatory that "specially provide[s] that it is subject to the incorporated collateral document" and that collateral document is "sufficiently described or referred to in the incorporating agreement." *BGT Grp., Inc. v. Tradewinds Engine Servs., LLC*, 62 So. 3d 1192, 1194 (Fla. 4th Dist. Ct. App. 2011). Because no separate written agreement exists between Philippe and IINK, incorporation is inapplicable to this case.

Second, Philippe's conduct does not bind him to arbitrate by assumption. Under a theory of assumption, "a party may be bound by an arbitration clause if its subsequent conduct indicates that [it] is assuming the obligation to arbitrate, despite being a nonsignatory." 21 Williston on Contracts at § 57:19. Such circumstances may arise where a nonsignatory willingly participates in the arbitration process, *see, e.g.*, *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991), or where a nonsignatory acts as though they have a valid contract containing an arbitration clause, *see Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338, 338–39 (Fla. 3d Dist. Ct. App. 2002). Philippe has taken no actions to indicate his assent to the Agreement. To the contrary, Philippe sought resolution of his dispute with IINK by pursuing a civil action and has opposed IINK's motion to compel arbitration. Thus, Philippe has not assumed an obligation to arbitrate.

**b.**

Third, Philippe cannot be forced to arbitrate under a theory of veil piercing/alter ego. A corporate relationship to a signatory is insufficient on its own to bind a nonsignatory to an arbitration agreement of the signatory. *See Federated Title Insurers, Inc. v. Ward*, 538 So. 2d 890,

892 (Fla. 4th Dist. Ct. App. 1989). And the mere fact that an entity is owned and controlled by one individual is insufficient to show that the entity is an alter ego for the individual such that the natural person may be held liable. *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984) (quoting *Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So. 2d 21, 23 (Fla. 1955)). The Florida Supreme Court has instructed that a corporate veil may not be pierced absent a showing of misconduct. *Id.* at 1121. Florida courts, applying *Dania*, have crafted a three-part test to determine when the corporate veil may be pierced. This test requires that:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th Dist. Ct. App. 1998). Because there is no allegation that Philippe used HetCo for any improper purpose, there is no basis to treat HetCo as an alter ego of Philippe, or to pierce the veil and bind Philippe to the arbitration clause.

Fourth, Philippe cannot be bound to the Agreement as a third-party beneficiary. Florida law generally bars nonparties to a contract from invoking the contract. *See* 11 Fla. Jur. 2d Contracts § 206. However, "intended third-party beneficiar[ies] of a contract may sue to enforce that contract." *Id.* But the third-party beneficiary doctrine does not work "the other way around." *Mendez*, 203 So. 3d at 149. Two parties cannot "bind a third—without the third party's agreement—merely by conferring benefit on the third party." *Id.* Thus, while a plaintiff who "sues under a contract to which the plaintiff is not a party" is subject to enforcement of "an arbitration clause contained in the contract," if that plaintiff "does not bring suit as a third-party beneficiary for the benefit of a contract signed by others," then Florida courts will not "enforce [the] contract in the absence of the party's agreement." *Id.* at 150. Philippe's claims do not arise under the

11

contract and are unrelated to his status as a potential third-party beneficiary of the Agreement. Therefore, under controlling Florida law, Philippe cannot be bound to the Agreement as a third-party beneficiary to the contract.

### c.

### i.

Fifth, Philippe cannot be bound to the Agreement as an agent of HetCo. A nonsignatory may be bound to an arbitration clause upon principles of agency. *See, e.g.*, *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 945–46 (Fla. 1st Dist. Ct. App. 2004); *Tenet Healthcare Corp. v. Maharaj*, 787 So. 2d 241, 243 (Fla. 4th Dist. Ct. App. 2001); *Ocwen Fin. Corp. v. Holman*, 769 So. 2d 481, 483 (Fla. 4th Dist. Ct. App. 2000). Such circumstances often arise where an agent enters an arbitration agreement on the principal's behalf. *See, e.g.*, *Fi-Evergreen Woods, LLC v. Estate of Robinson*, 172 So. 3d 493, 497–98 (Fla. 5th Dist. Ct. App. 2015) (citing *Ruotal Corp., N.W., Inc. v. Ottati*, 391 So. 2d 308, 309 (Fla. 4th Dist. Ct. App. 1980)).[9] And, in certain circumstances, Florida courts "have construed arbitration agreements to benefit employees of the signatory." *Liberty Commc'ns, Inc.*, 733 So. at 575. But merely "[s]igning a contract as an agent for a disclosed principal is not sufficient to bind the agent to arbitrate." *Id.*; *see also Johnson v. Pires*, 968 So. 2d 700, 702 (Fla. 4th Dist. Ct. App. 2007) (a "person who signs a contract only in a corporate capacity is not bound as an agent").

IINK purports to draw precisely the opposite conclusion from *Meridian Imaging Sols.*, a case from this District, which stated that "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreement." 250 F. Supp. 3d at 23 (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,*

---

[9] It is for this reason that Philippe may properly bind HetCo to the Agreement.

*Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993)). It is important to understand the context for—and necessary limitations of—that language. In *Pritzker*, the Third Circuit confronted a suit by the trustees of a pension plan against a brokerage firm and a financial consultant employed by that firm. *Id.* at 1112. The employee in question did not sign the arbitration agreement between the trustees and the brokerage firm, but the court held that, under traditional agency principles, the claim against the employee should be resolved in arbitration alongside the claims against the signatory firm. *Id.* at 1121. This was so because corporations "can only act through [their] employees" and those employees may be "integral to" the alleged "violations of the principal corporation." *Id.* at 1122 (quoting *Leitzia v. Prudential Bache Secs.*, 802 F.2d 1185, 1188 (9th Cir. 1986) and *Trott v. Paciolla*, 748 F. Supp. 305, 309 (E.D. Pa. 1990)). Indeed, "an arbitration agreement would be of little value if it did not extend" to employees of a corporation. *Id.* The Third Circuit thus recognized the unremarkable proposition that when a claim is brought against a corporate entity subject to a valid arbitration agreement, the company's employees whose conduct gave rise to the claim are also covered "under the terms of a valid arbitration clause." *Id.* at 1121.

Similarly, in *Meridian Imaging Sols.*, the plaintiff alleged that a competitor's employee stole the plaintiff's confidential information and trade secrets to support the competitor's business. 250 F. Supp. 3d at 15, 17–18. The plaintiff was pursuing its claims against the competitor in arbitration and brought a civil action against the employee "arising out of the same nucleus of operative facts" as the claims in arbitration. *Id.* at 17. This Court held that the employee, a nonsignatory to the arbitration agreement, could enforce the arbitration clause against the plaintiff because the plaintiff's claims against the employee were "based on his conduct as an agent of" the company. *Id.* at 23. In so holding, this court cited to IINK's favored dicta from *Pritzker* and further noted that "a corporation's agents or employees may in some instances invoke the company's

arbitration clause." *Id.* Florida courts have reached a similar conclusion on analogous facts. *See Heller v. Blue Aerospace, LLC*, 112 So. 3d 635, 637 (Fla. 4th Dist. Ct. App. 2013) (permitting the sole member and employee of an LLC to invoke that LLC's arbitration clause against a signatory plaintiff who brought claims against the nonsignatory employee for conduct undertaken in his capacity as an agent of the LLC).

What *Pritzker*, *Meridian*, and the related caselaw make clear is that a nonsignatory agent may sometimes invoke, or be bound by, a principal's arbitration agreement when a claim is brought against an agent for conduct undertaken in his capacity as an agent of the principal. But it simply cannot be—and indeed, is not—the law that *any* agreement a principal enters will likewise bind its agents. To the contrary, it is a basic principle of agency law that "[w]hen an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, . . . the agent is not a party to the contract unless the agent and third party agree otherwise." Restatement (Third) of Agency § 6.01 (Am. L. Inst. 2006); *see also Mionis v. Bank Julius Baer & Co.*, 749 N.Y.S.2d 497, 502 (N.Y. App. Div. 1st Dep't. 2002) ("Under a well-settled principle of agency law, an agent who signs a contract on behalf of a known principal cannot be held to have made a commitment in his . . . individual capacity . . . . This principle has been consistently applied in the context of arbitration); *Johnson v. Pires*, 968 So. 2d at 702 (applying this principle as a matter of Florida law). Thus, the mere fact that Philippe signed the Agreement as a known and disclosed agent of HetCo does not suffice to bind Philippe to that Agreement. IINK alleges no other operative conduct between Philippe and HetCo that would bind Philippe to the Agreement. Philippe's claim against IINK alleges the defamation of Philippe's personal character. No theory of agency law compels Philippe to subject that claim to the terms of HetCo's contractual relations with IINK.

**ii.**

Finally, there is no basis in equity to estop Philippe from raising his status as a nonparty to the Agreement. Equitable estoppel "is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position," which precludes the wrongful party "from asserting rights which perhaps have otherwise existed." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001) (quoting *State ex rel. Watson v. Gray*, 48 So. 2d 84, 87–88 (Fla. 1950)). Thus, equitable estoppel "presupposes a legal shortcoming . . . that is directly attributable to the opposing party's misconduct." *Id.* at 1077. In the context of arbitration, a nonsignatory may be bound to an arbitration agreement under a theory of equitable estoppel where "the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 969 (Fla. 3d Dist. Ct. App. 2010); *see also Shetty v. Palm Beach Radiation Oncology Assocs.–Sunderam K. Shetty, M.D., P.A.*, 915 So. 2d 1233, 1235 (Fla. 4th Dist. Ct. App. 2005) (same). Equitable estoppel may also arise "when each of the signatory's claims against a non-signatory make reference to or presume the existence of a written agreement." *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d Dist. Ct. App. 2003) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

These principles provide no basis on which to estop Philippe from avoiding arbitration. Philippe has not engaged in any conduct that disadvantaged IINK's legal position or that would make it inequitable for Philippe to avoid arbitration. There is no allegation of interrelated misconduct on the part of Philippe and HetCo. Five of the six claims asserted by Plaintiffs are asserted solely by HetCo. Those five claims relate to IINK's allegedly improper access to and

disclosure of HetCo's client information, which IINK had access to pursuant to the Agreement. The lone claim asserted by Philippe—defamation—does not refer to or presume a contract between HetCo and IINK. In other words, whether IINK's statements about Philippe are defamatory is independent of the contractual relationship between IINK and HetCo. Seeking to avoid this conclusion, IINK asserts that Philippe received a "direct benefit" from the Agreement and should therefore be estopped from evading arbitration. Reply Br. at 5 (Dkt. 17). IINK provided services to HetCo, and Philippe, as sole owner of HetCo, may have indirectly benefited from that business relationship. But the operative relationship was and is between HetCo and IINK; IINK conferred no direct benefit to Philippe, and IINK identifies none. Any incidental benefit to Philippe cannot suffice to equitably bind him to an Agreement to which he was not a party, as "the mere fact that one obtains tangential benefits from a contract does not subject one to an arbitration provision in that contract." *UBS Fin. Servs., Inc. v. Johnson*, 943 So. 2d 118, 123 (Ala. 2006); *accord Mendez*, 203 So. 3d at 149–50 (Fla. 2016) (implementing this principle).

IINK also asserts that equitable estoppel is appropriate because Philippe's claims against IINK are "intimately connected and intertwined with those of HetCo." Reply Br. at 5. In some cases, Florida courts have discussed a close factual nexus between claims in arbitration and claims in a civil action as relevant to an equitable estoppel inquiry. *See, e.g.*, *Shetty*, 915 So. 2d at 1234–36; *Armas*, 842 So. 2d at 212. But those cases have all involved invocation of an arbitration agreement by *a nonsignatory against a signatory*. None involves invocation of an arbitration agreement by *a signatory against a nonsignatory*. For example, in *Shetty*, the plaintiff sued two defendants, only one of whom had signed an arbitration agreement. 915 So. 2d at 1234. After the defendants moved to compel arbitration, the plaintiff dropped the nonsignatory as a defendant, and the case proceeded to arbitration against the remaining signatory defendant. *Id.* The plaintiff then

brought a new complaint against the nonsignatory based on the same facts as the original action. *Id.* The court concluded that the second action was "inextricably linked" to the first and found that equitable estoppel permitted the nonsignatory to invoke the arbitration agreement. *Id.* at 1236. Similarly, in *Armas*, the defendant was an officer of two corporations and the defendant, the plaintiff, and one of the corporations entered an arbitration agreement. 842 So. 2d at 211. The defendant sent a bad check from the nonsignatory corporation to the account of the signatory corporation to settle a balance due to plaintiff. *Id.* The plaintiff initiated an arbitration proceeding against the defendant and signatory corporation and a separate civil action against the defendant and nonsignatory corporation. *Id.* The *Armas* court held that equitable estoppel permitted the nonsignatory corporation to enforce the arbitration clause because there was "concerted conduct" by the nonsignatory and signatories and the plaintiff's claims against the nonsignatory were predicated "on the underlying contractual obligation[s]" between the signatories. *Id.* at 212. In both *Shetty* and *Armas*, equitable estoppel was necessary "to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage . . . and repudiating it when it works to his disadvantage." *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (cleaned up), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003).

Thus, significantly, Florida courts "have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633 (Fla. 4th Dist. Ct. App. 2013). Florida courts have not estopped a nonsignatory from resisting arbitration with a signatory simply because the nonsignatory had claims related to those of a signatory to the arbitration agreement. And while both HetCo and

Philippe allege defamation, "[c]laims of various entities, even though interrelated, must ordinarily be treated separately." *Federated Title Insurers, Inc.*, 538 So. 2d at 891. Thus, Philippe cannot be compelled to arbitrate on a theory of equitable estoppel.

In sum, there is a valid and enforceable arbitration agreement between HetCo and IINK that binds HetCo as a signatory. Philippe, as a nonsignatory to the Agreement, is not bound to the contract's arbitration clause. And there is no basis in Florida law to compel Philippe to arbitrate his claim against IINK.

**B.**

Although Philippe's claim is not subject to arbitration, HetCo's claims may be arbitrable if those claims fall within the scope of the Agreement. Because an agreement to arbitrate is simply a contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Thus, while there is a "liberal federal policy favoring arbitration agreements," *Mitsubishi Motors Corp.*, 473 U.S. at 625, the presumption in favor of arbitration does not apply to the issue of which claims are arbitrable, *i.e.*, arbitrability. *See Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999). As the Supreme Court has recently explained, the "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022). Thus, "a court must hold a party to its arbitration contract just as the court would to any other kind" of contract, but "a court may not devise novel rules" or interpretations "to favor arbitration over litigation." *Id.*

Both the Fourth Circuit and the Supreme Court have also advised that courts "should not assume that the parties agreed to arbitrate arbitrability." *Carson*, 175 F.3d at 329 (quoting *First Options of Chi.*, 514 U.S. at 944). While parties can authorize an arbitrator to determine the scope

of her own jurisdiction, and thus to decide which disputes the parties have agreed to arbitrate, such an intention must be "clearly and unmistakably" indicated. *Id.* (citing *AT & T Techs.*, 475 U.S. at 649). For that reason, courts do not consider broadly worded arbitration clauses to encompass an agreement to arbitrate the arbitrability of disputes. *Id.* Rather, the general rule is that a "disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court," rather than the arbitrator, to decide "as a matter of contract interpretation." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 117 (4th Cir. 1993).[10] That interpretation must "give effect to the parties' intentions as expressed in their agreement," applying "ordinary state law principles governing the formation of contracts." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015).

Under Florida law, the "parties' intention governs contract construction and interpretation," and thus, "whether an arbitration clause requires arbitration of a particular dispute necessarily 'rests on the intent of the parties.'" *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*, 910 So. 2d 381, 383 (Fla. 5th Dist. Ct. App. 2005); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) (quoting *Seaboard Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir. 1982)). The "best evidence of intent is the contract's plain language." *Whitley*, 910 So. 2d at 383. Therefore, analysis properly begins with the arbitration agreement's text. The parties' agreement states that:

---

[10] Of course, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as the underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). IINK argues that the parties have done so in the Agreement. There is no need to resolve this question, because even assuming that the parties have not agreed to arbitrate arbitrability, HetCo's claims fall squarely within the scope of the arbitration clause.

>[HetCo] agrees that **all claims or disputes arising out of or relating to the Services** will be decided by an arbitrator through arbitration.

>"Service" and "Services" means the services provided to [HetCo] by iink as detailed in the Service Supplements set forth in Section 2.3.

Such services include:
>Multi-party check endorsement processing and direction of deposit services for mobile applications using digital signatures.

>[HetCo] [] provid[ing] iink with [] relevant Client Customer Data . . . to use and process Client Customer Data solely for offering Customer the Payments Services or related services.

Agreement §§ 1, 12.10; Supplemental Terms and Conditions § 2 (emphasis added).

Each of HetCo's claims relate to services under the contract. HetCo's alleged harm stems from injuries that resulted when IINK disclosed HetCo's customer data—data which HetCo shared with IINK pursuant to the parties' contract. IINK then contacted HetCo's clients and informed those clients that the Plaintiffs engaged in hacking operations, sanctions violations, identity theft, and fraud. These purportedly defamatory statements were made based on IINK's investigation of HetCo's activities using IINK's services. Plaintiffs argue that their claims fall outside the Agreement because the claims sound in tort, and that arbitration may only be compelled for contract-based claims. That is not so. The phrase "'arising out of or relating to' the contract has been interpreted broadly to encompass virtually all disputes between . . . contracting parties, including related tort claims." *Seifert*, 750 So. 2d at 637 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 15 n.7 (1984) and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967)); *see also Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (the phrase "arose out of or related to" and "similar formulations [are] broad arbitration clauses capable of an expansive reach."). The relevant inquiry is the relationship between the claim and the agreement, not the "legal label attached to the dispute (i.e., tort or breach of contract)."

*Seifert*, 750 So. 2d at 638, 640.[11] Plaintiffs' claims all stem from a "dispute . . . relating to the Services" that IINK provided to HetCo and are therefore covered by the plain terms of the Agreement.

**C.**

Plaintiffs argue that the contract is unenforceable as an "infinite arbitration agreement," which the plaintiffs define to be "a contract between [two] parties in an attempt to arbitrate all future, miscellaneous acts between the parties irrespective of the relationship to the transaction of the contract." Resp. Br. at 13 (Dkt. 15). Plaintiffs rely on the dissenting opinion of Judge Harris in *Mey v. DIRECTV, LLC*, which in turn cites to a law review article criticizing purportedly overbroad interpretations of the Federal Arbitration Act. 971 F.3d at 305 (discussing David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633, 643 (2020) (hereinafter "Infinite Arbitration")). The article in turn notes several instances of courts declining to enforce arbitration agreements that purport to cover any future dispute between the contracting parties on any subject matter. *See* Infinite Arbitration at 660 (citing *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003)). Plaintiffs assert that the Agreement here should be similarly held unenforceable. That argument fails.

First, as Plaintiffs' own source notes, the Supreme Court's recent decisions interpreting the FAA have "implicitly overruled the lower court cases that refused to enforce infinite language." Infinite Arbitration at 662. Indeed, the "FAA was designed 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.'" *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (quoting *Dean Witter Reynolds Inc. v.*

---

[11] *Cf. Wachovia Bank, Nat'l Assoc. v. Schmidt*, 445 F.3d 762, 768 n.5 (4th Cir. 2006) (noting that requiring a "significant relationship" between an asserted claim and the contract is in tension with a contractual clause requiring that the claim only "relate to" the contract and with "the Supreme Court's mandate that [courts] apply the ordinary tools of contract interpretation in construing an arbitration agreement.").

*Byrd*, 470 U.S. 213, 219–20 (1985)); *accord Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1917 (2022). Section 2 of the FAA expressly "limits the grounds for denying enforcement" of arbitration agreements and does not permit judges to supplement the congressional scheme. *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 98 (2017). Second, Judge Harris's dissenting opinion is just that—a dissent. *Mey*—a binding precedent—held that courts should not decline to enforce an arbitration agreement because the contract's broadest possible construction "could lead to troubling hypothetical scenarios." 971 F.3d at 294. Rather, courts must "look to the underlying factual allegations to determine whether they fall within the scope of the arbitration clause." *Id.* (quoting *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 878 (8th Cir. 2018)). Third, the concern expressed by Judge Harris, the Horton article, and related judicial opinions pertains to contracts covering "all disputes and claims between" the parties. *Id.* at 302 (Harris, J., dissenting). Judge Harris contrasted that language with a contract governing claims "arising out of or relating to" the underlying contract, which has a "contractual nexus." *Id.* at 305. In other words, even if Judge Harris's dissent were binding authority, the arbitration agreement here would still be enforceable. Thus, Plaintiffs' argument fails.

### D.

Finally, Plaintiffs argue that the FAA is "preempted" by the Seventh Amendment. The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. Trial by jury is "a basic and fundamental feature of our system of federal jurisprudence," and an "elemental procedural safeguard[]." *Jacob v. City of New York*, 315 U.S. 752, 752 (1942); *Reid v. Covert*, 354 U.S. 1, 9–10 (1957). For that reason, the Supreme Court has directed that "any seeming

curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

However, the Seventh Amendment, "as a personal right . . . is subject to waiver, just as are other personal constitutional rights that dictate procedures by which civil . . . matters must be tried." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986). Thus, a party can waive its right to trial by jury by agreeing to an alternate form of dispute resolution. The FAA does not abrogate the right to trial by jury; it simply holds that, as a matter of federal law, arbitration agreements, like any other contract, are enforceable. In other words, the FAA merely "withdr[aws] . . . a judicial forum for the resolution of claims" that parties themselves choose to resolve through arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). It was HetCo's assent to arbitrate— not any Act of Congress—that abrogated HetCo's right to jury trial. If the Constitution prohibited a party's voluntary waiver of the right to trial by jury, then parties could not consent to a bench trial, to magistrate judge jurisdiction, or to any other form of alternate dispute resolution. *But see Duncan v. Louisiana*, 391 U.S. 145, 158 (1968) (waiver of right to trial by jury in criminal case); *Roell v. Withrow*, 538 U.S. 580, 586–87 (2003) (waiver of right to Article III judge); Rule 38(d), Fed. R. Civ. P. (waiver of right to trial by jury in civil cases).

In the context of the FAA, it is "well-established that '[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one.'" *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002) (quoting *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir.1992)).[12] Some courts have required that any waiver of a right to jury trial be

---

[12] *See also Seus v. John Nuveen & Co.*, 146 F.3d 175, 183–84 (3d Cir. 1998), *abrogated on other grounds*, *Blair v. Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002); *Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302, 307 (4th Cir. 2001); *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 420–21 (6th Cir. 2011); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1197 (7th Cir. 1987); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1361 (11th Cir. 2005) (all holding the same).

made "knowingly and intentionally" and adopted "a presumption [] against its waiver." *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977). The Fourth Circuit disagrees; it has instructed that courts need not apply a heightened standard because "the 'loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'" *Sydnor*, 252 F.3d at 307 (quoting *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 344, 339 (7th Cir. 1984)). But even applying the "knowingly and intentionally" standard, HetCo's waiver of its Seventh Amendment right was knowing and voluntary. The Agreement states that HetCo "agrees that all claims or disputes arising out of or relating to the Services will be decided by an arbitrator in arbitration *and not by a judge or jury*." Agreement § 12.10 (emphasis added). In the next section, the Agreement again states, in all caps, "Waiver of Jury Trial. CLIENT WAIVES ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND RECEIVE A JUDGE OR JURY TRIAL." Agreement § 12.11. These terms were prominently displayed, and "one who signs a contract is presumed to know and agree to its terms." *CEFCO*, 278 So. 3d at 354; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (looking to the "clarity and conspicuousness of arbitration terms" to determine whether a party was put on notice of the terms) (internal alterations and quotations omitted). Thus, there is no merit to Plaintiffs' Seventh Amendment challenge.

**IV.**

Because IINK has shown a valid and enforceable agreement to arbitrate between IINK and HetCo that covers HetCo's claims, the proper remedy must next be determined. Section 3 of the FAA grants a court the power to stay litigation pending arbitration. Section 4 instructs a court to

order arbitration when a party has failed to arbitrate. Section 4 also specifies the appropriate venue in which to do so:

> A party . . . may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that [] arbitration proceed in the manner provided for in [a written] agreement . . . . The court . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.

Section 4 thus mandates two conditions for a district court to compel arbitration: (i) the arbitration must be held in accordance with the agreement of the parties and (ii) the arbitration must be held in the district in which the court sits. The Agreement states that arbitration "will take place in Tampa, Florida." Agreement § 12.10. When a motion to compel arbitration is brought outside the district in which the arbitration agreement specifies that arbitration shall occur, courts have taken three approaches. The first approach permits a district court to compel arbitration in the district specified in the arbitration agreement even if that is not the district in which the petition for arbitration was filed. *See Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1278 (5th Cir. 1975) (per curiam). A second view holds that a district court may compel arbitration in its district notwithstanding the designation of a contrary forum in the arbitration clause because the FAA "does not require venue in the contractually-designated arbitration locale." *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 783–85 (9th Cir. 2001); *accord Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*, 197 F. Supp. 2d 1, 3 (S.D.N.Y. 2002). Finally, the third and majority approach holds that where an "arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration." *Merrill*

*Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327–28 (7th Cir. 1995).[13] The Fourth Circuit has not spoken to the proper resolution in these circumstances, but the plain text of the FAA and the national caselaw make clear that the majority position is the only disposition authorized by Congress.

The first approach—permitting a court to order arbitration outside its district—is irreconcilable with the text of the FAA. Section 4 of the FAA provides that arbitration "*shall* be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4 (emphasis added). The term "shall" is not defined in the FAA and must therefore be given "its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). "Shall . . . is the language of command" and ordinarily "makes the act . . . mandatory." *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).[14] In holding that a district court could compel arbitration in another district, the Fifth Circuit acknowledged that "the order, on its face, is contrary to the express terms of the [FAA]" but nevertheless held that courts need not "take[] such a literal approach to the . . . mandate of section 4" because complying with the contractual venue-selection was "consistent with the policy underlying the Federal Arbitration Act." *Dupuy-Busching Gen. Agency*, 524 F.2d at 1276, 1278; *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 331 (5th Cir. 1987). But it "frustrates rather than

---

[13] *See also Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 449 F.2d 1391, 1394 (3d Cir. 1974); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220–21 (10th Cir. 2005); *Roe v. Gray*, 165 F. Supp. 2d 1164, 1171–72 (D. Colo. 2001) (collecting cases holding the same).

[14] *See also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (the use of shall "normally creates an obligation impervious to judicial discretion"); *Holland v. Pardee Coal Co.*, 269 F.3d 424, 431 (4th Cir. 2001) ("the word 'shall,' when used in a statutory context, is generally construed to be mandatory."). Of course, "in a proper case 'shall' may properly be construed as permissive" when the context so indicates. *United Hosp. Ctr., Inc. v. Richardson*, 757 F.2d 1445, 1453 (4th Cir. 1985); *accord Trumball Invs., Ltd. I v. Wachovia Bank, N.A.*, 436 F.3d 443, 447 (4th Cir. 2006). But there is no such contrary context here.

effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (per curiam). Because Section 4 mandates that district courts *shall* direct the parties to arbitrate in the district in which a petition is filed, it leaves no room for a district court to order arbitration outside the filing district.

The second approach—compelling arbitration within the petitioning district notwithstanding a contrary choice of forum in the contract—is no more defensible. The Ninth Circuit adopted this reading of Section 4 on the theory that the FAA "only confines the *arbitration* to the district in which the petition to compel is filed," and that petition need not "be filed where the contract specified that arbitration should occur." *Textile Unlimited*, 240 F.3d at 785. Section 4's opening sentence contains a broad venue clause, authorizing parties to petition for an order compelling arbitration in "any United States district court which, save for such agreement, would have jurisdiction under Title 28." 9 U.S.C. § 4. But Section 4 then goes on to include three express limitations. First, a party may only petition "for an order directing that [] arbitration proceed in the manner provided for in [the arbitration] agreement." *Id.* Second, a court may only "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* Third, the "hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." *Id.* Thus, where an arbitration agreement specifies venue, a party may bring an action in any district court consistent with Title 28, but a party may only petition for arbitration in the contractual forum, the district court may only order arbitration in the agreed to venue, and the court cannot order arbitration outside its own district. The Ninth Circuit considered only the last of these limitations while disregarding the other statutory restrictions.

The Ninth's Circuit's holding in *Textile Unlimited* also drew on the Supreme Court's decision in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, which held that the venue provisions of 9 U.S.C. § 9 (confirmation of arbitration awards), § 10 (motions to vacate awards), and § 11 (modification or correction of awards) supplement rather than restrict the general venue provision of 28 U.S.C. § 1391. 529 U.S. 193, 195, 204 (2000); *see Textile Unlimited*, 204 F.3d at 784. In the Ninth Circuit's view, *Cortez Byrd Chips*' holding "is equally applicable" to § 4. Not so. Section 9 of the FAA provides that where "parties in their agreement . . . shall specify the court, then . . . any party to the arbitration *may* apply to the court so specified for an order confirming the award." 9 U.S.C. § 9 (emphasis added). Sections 10 and 11 use "similar[] . . . pertinent language." *Cortez Byrd Chips*, 529 U.S. at 198. In contrast, Section 4 employs a mandatory "shall" that repeatedly limits venue to the petitioned to court and the district specified in the parties' agreement. The Ninth Circuit also noted that the Supreme Court described § 4 as containing "even more obviously permissive language" than §§ 9–11. *Textile Unlimited*, 240 F.3d at 785 (quoting *Cortez Byrd Chips*, 529 U.S. at 199). But the Supreme Court was referring only to the first sentence of Section 4, which employs a similarly discretionary "may," and broadly authorizes venue "in any United States district court." 9 U.S.C. § 4. Significantly, the Supreme Court did not rule on, describe, or in any way reference the remaining restrictions found in § 4. And issues "not raised, not argued, and hence not analyzed" are no more than a "passing observation" not entitled to precedential effect. *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting); *United States v. McLeod*, 808 F.3d 972, 977 (4th Cir. 2015). Finally, as the Seventh Circuit recognized, the Ninth Circuit's approach would allow parties to "avoid the effect of the agreed-to forum merely by filing suit in a different district," thereby incentivizing parties to race to the courthouse to secure a favorable forum contrary to their contractual obligations. *Snyder v.*

*Smith*, 736 F.2d 409, 419–20 (7th Cir. 1984), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The most appropriate approach is the majority rule, namely, that where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has the power to order arbitration under § 4. That interpretation is most faithful to the text of the FAA. It conforms with the judgment reached by most courts confronted with this question. And, as another court in this District has noted, the Fourth Circuit has at least "implied that it would align itself with the majority position" were it squarely presented the issue. *Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.*, 628 F. Supp. 2d 674, 683 (E.D. Va. 2009) (citing *Elox Corp. v. Colt Indus., Inc.*, 952 F.2d 395, 1991 WL 263127, at *1 (4th Cir. 1991) (unpublished table decision)). For these reasons, this Court lacks the power to compel HetCo to arbitrate in Florida pursuant to the Agreement.

## V.

Because arbitration cannot be compelled in this District, IINK argues that this matter should be transferred to the Middle District of Florida ("MDFla"), Tampa Division, pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). The Agreement states that arbitration "will take place in Tampa, Florida, unless otherwise agreed." Agreement § 12.10. The Agreement also states that "[a]ny legal suit, action or proceeding arising out of, or related to, this Agreement shall be instituted exclusively in the federal courts of the United States or the courts of the State of Florida in each case located in the City of Tampa." *Id.* at § 12.9.

Under both §§ 1404 and 1406, venue over an action may be transferred to any district court or division where the action could have been brought. A case may be brought in a forum only if personal jurisdiction and venue are proper in that forum. *See Hoffman v. Blaski*, 363 U.S. 335, 342–43 (1960). This threshold prerequisite must be satisfied before it is appropriate to consider

whether the case should be transferred to the transferee forum. IINK is headquartered in Tampa, Florida, within the Middle District of Florida. Thus, the MDFla has personal jurisdiction over IINK. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (a corporation's principal place of business is a basis for the exercise of general personal jurisdiction). Venue is also proper, as the MDFla is the district where IINK resides. *See* 28 U.S.C. §§ 1391(b), (c)(2). Therefore, analysis proceeds to whether transfer is appropriate.

## A.

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Thus, § 1406(a) deals with improper venue and mandates that a court dismiss or transfer to a proper forum. Section 1404(a) applies where venue is otherwise proper and permits transfer, but not dismissal. Section 1406 is inapplicable because venue is not improper in this District. As the Supreme Court has explained, arbitration is "in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). And "venue is proper so long as the requirements of [28 U.S.C.] § 1391(b) are met, irrespective of any forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 57 (2013). The only basis IINK raises for improper venue is the contractual forum selection clause, which does not affect the propriety of venue under § 1391(b). As a result, there is no occasion to consider whether venue is improper on any other ground, as venue is a "personal

privilege of the defendant" that "may be waived." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).[15] Therefore, the action may not be transferred under § 1406.

## B.

It remains to consider whether § 1404 permits transfer. While a forum selection clause does not render venue improper under § 1391(b), and cannot therefore be enforced under § 1406(a), the clause "may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co.*, 571 U.S. at 59; *see also Stewart Org. v. Ricoh Copiers*, 487 U.S. 22, 32 (1988) ("§ 1404(a)[] governs the District Court's decision whether to give effect to the parties' forum-selection clause"). Federal courts generally apply federal law when deciding whether to enforce a forum selection clause. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) (aggregating cases). As a matter of federal law, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972).

A forum selection clause may be exclusive or permissive. An exclusive clause "requires litigation to occur in a specified forum; a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018), *as amended* (Mar. 27, 2018). The Fourth Circuit has instructed "that 'an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.'" *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. & Distrib., Inc.*, 22 F.3d 51, 53 (2d Cir.

---

[15] *See also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue); Rule 12(h), Fed. R. Civ. P. ("A defense of . . . improper venue . . . is waived . . . if it is neither made by motion . . . nor included in a responsive pleading or an amendment thereof.").

1994)). Construction of a forum selection clause is a matter of contract interpretation, governed here by Florida law. *See Albemarle Corp.*, 628 F.3d at 650–52. Florida courts have adopted the federal standard articulated in *The Bremen*, *see Manrique v. Fabbri*, 493 So. 2d 437, 440 (Fla. 1986), and similarly distinguish between "permissive and [] mandatory" choice of forum clauses. *Garcia Granados Quinones v. Swiss Bank Corp. (Overseas), S.A.*, 509 So. 2d 273, 275 (Fla. 1987). In *Garcia Granados Quinones*, the Supreme Court of Florida expressly distinguished between a venue selection clause using a permissive "may" and a mandatory "shall." *Id.* The Agreement here is unambiguously mandatory, providing that suit "*shall* be instituted *exclusively* in the federal courts of the United States or the courts of the State of Florida in each case located in the City of Tampa." Agreement § 12.9 (emphasis added); *see also Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 210 n.7 (4th Cir. 2022) (holding that a forum selection clause stating that the forum was the "exclusive jurisdiction" was mandatory). Thus, the "federal common law favoring the enforcement of forum selection clauses" requires transfer under 28 U.S.C. § 1404(a) unless giving effect to the choice of forum would be unreasonable. *Albemarle Corp.*, 628 F.3d at 649–50. Plaintiffs have raised no argument that the choice of forum clause here is unreasonable, and none is apparent on the record. As a result, HetCo's claims against IINK must be transferred to the MDFla, Tampa Division, pursuant to 28 U.S.C. § 1404(a) and the parties' mandatory forum selection clause. However, Philippe, as a nonsignatory to the contract, is not bound to the contractual choice of forum. And so it must be determined whether transfer of Philippe's claim is appropriate under § 1404(a).

Where venue is otherwise proper, a district court may transfer the matter "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). The decision to transfer is committed to the sound discretion of the district court. *See S. Ry. Co. v.*

*Madden*, 235 F.2d 198, 201 (4th Cir. 1956). In making the transfer decision, a court must consider "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Each factor is considered in turn.

## 1.

A plaintiff's choice of forum is ordinarily entitled to substantial weight. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). This is particularly so when a plaintiff selects its home forum. *Id.*; *see also Prod. Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004). The burden is on the defendant to show "that the deference due plaintiff's choice of venue is clearly outweighed by other factors." *Bd. of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.* 702 F. Supp. 1253, 1256 (E.D. Va. 1988). Here, Philippe is a resident of Virginia and alleges reputational harms occurring in this District. Because Philippe chose to bring his claims in his home forum, that choice of forum must be given substantial weight in the transfer analysis.

## 2.

The next factor is the convenience of the witnesses, which "is often dispositive in transfer decisions." *Baylor Heating*, 702 F. Supp. at 1258. Courts give greater weight to the convenience of "witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Id.* In contrast, courts give less weight to witness convenience "when the appearance of witnesses can be secured without the necessity of compulsory process." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007). It is not simply "the number[]" of witnesses inconvenienced that is "decisive on the question of transfer," but "the proposed

relevance of witnesses' testimony." *Ala. Great S. R.R. Co. v. Allied Chem. Co.*, 312 F. Supp. 3, 9 (E.D. Va. 1970). The party asserting inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh v. Microtek Int'l Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).

Here, IINK alleges that "a majority of the witnesses in this matter are located" in Tampa Florida. Op. Br. at 7 (Dkt. 13). IINK provides no basis for this assertion other than a citation to its headquarters in that location. A mere "conclusory statement that witnesses . . . would be inconvenienced if the case were to go forward in Virginia" does not suffice to satisfy a party's burden to transfer. *Baylor Heating,* 702 F. Supp. at 1258. Rather, a "party claiming that witness inconvenience necessitates a venue change [must] supply a court with reliable information, identifying the witnesses he intends to call, along with information about their expected testimony." *JTH Tax, Inc. v. Hines*, 2016 WL 4582081, at * 6 (E.D. Va. July 26, 2016). Plaintiffs, by contrast, identify five individuals or categories of witnesses who would be relevant for trial: (i) personnel from IINK; (ii) Philippe Hetrick; (iii) personnel from Shanco, a roofing/exterior company in the DMV area;[16] (iv) personnel from Feazel, an Ohio roofing/exterior company; and (v) Joseph Stephens, a manager of Shanco.

The convenience of party witnesses neither favors nor disfavors transfer as each party merely seeks the convenience of its home forum without evidence of disproportionate burden from litigation in a foreign venue. This dispute arises from IINK's allegedly improper access and disclosure of HetCo's client information. That disclosure occurred following an investigation by IINK of HetCo's account with IINK, which revealed potentially improper conduct on the part of

---

[16] District of Columbia, Maryland, and Virginia.

HetCo and Philippe. Philippe would be a necessary party witness to discuss HetCo's business, HetCo's use of IINK's services, and the alleged harms to HetCo and Philippe from IINK's conduct. One or more personnel from IINK would also be necessary party witnesses to discuss the investigation of HetCo's conduct and the basis for any statements or disclosures made by IINK. The record does not support a finding that either party's witnesses would face greater inconvenience from litigation outside their home forum.

The convenience of nonparty witnesses is typically "afforded greater weight in deciding a motion to transfer venue" than the convenience of party witnesses. *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). Here, Plaintiffs have identified three categories of non-party witnesses: Shanco employees, Feazel employees, and Joseph Stephens. This District would clearly be more convenient for Shanco, a Maryland company with offices in the Eastern District of Virginia ("EDVa"), than the MDFla. The EDVa would also be more convenient than the MDFla for Mr. Stephens, who is alleged to be a resident of the DMV area. Neither the EDVa nor the MDFla are convenient venues for Shanco, which has its principal place of business in Ohio. However, the EDVa is closer to Ohio than the MDFla, so the EDVa is less inconvenient. Plaintiffs note that many of the pertinent communications between IINK and Shanco are already in Plaintiffs' possession, and that Feazel witnesses may therefore only have a limited role in this litigation. There is ambiguity at this early stage which witnesses will ultimately prove pertinent to trial. But on the limited record available, Plaintiffs have made a plausible showing of greater inconvenience to nonparty witnesses if this case is transferred to the MDFla than if this case were to remain in the EDVa. IINK has provided no evidence to the contrary. Therefore, the convenience of witnesses favors retention of Philippe's case in this district.

**3.**

The third factor is the convenience of the parties, which looks to the "ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010). Transfer should not simply "shift the balance of inconvenience" from the defendant to plaintiff. *Smithfield Packing Co., Inc. v. V. Suarez & Co., Inc.*, 857 F. Supp. 2d 581, 589 (E.D. Va. 2012).

The convenience of the parties does not favor transfer. The parties face a comparable burden of litigating within or outside their home district, and "when plaintiffs file suit in their home forum, convenience to the parties rarely, if ever, operates to justify transfer." *Baylor Heating*, 702 F. Supp. at 1259. Much of the evidence pertinent to this matter relates to electronic communications between Plaintiffs, Defendants, and third parties Feazel and Shanco. Neither party has pled where those communications are stored, and in any event, those documents can likely be accessed from either forum with minimal burden. If compulsory process proves necessary, the parties could subpoena trial witnesses from Shanco in this District but not in the MDFla. *See* Rule 45(c)(1), Fed. R. Civ. P. For these reasons, the convenience of the parties does not favor transfer.

**4.**

The final factor, the interest of justice, "encompasses public interest factors aimed at systemic integrity and fairness." *Heinz Kettler GMBH*, 750 F. Supp. 2d at 669 (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)); *accord Stewart Org.*, 487 U.S. at 30. This includes judicial economy and any pending related actions, the interest in having local controversies decided at home, and the court's familiarity of applicable law. *See U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 937 (E.D. Va. 2005).

There is minimal judicial economy to be gained from transferring Philippe's claim to the MDFla. HetCo and Philippe both raise a claim for defamation, and there is a risk of inconsistent judgments given the related factual nexus. However, HetCo will proceed before an arbitrator, not a court, and thus consolidation of Philippe and HetCo's claims is not possible even if transfer were granted. Virginia citizens have an interest in resolving this case, as it involves an alleged injury to a Virginian. *See*, *e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (describing the "local interest in having localized controversies decided at home."). The MDFla has at least no more familiarity with the applicable law than the EDVa, and possibly less. This is so because it is unclear on this record which state's law would apply to Philippe's defamation claim. A federal court sitting in diversity jurisdiction applies the choice of law principles of the forum state. *Klaxon Co.*, 313 U.S. at 496–97. The relevant inquiry is therefore what law Virginia would look to. *Lex loci deliciti*, or the law of the place of the wrong, is "the settled rule in Virginia" for actions arising in tort. *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993) (quoting *McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979)). The place of the wrong is "the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement (First) of Conflict of Laws § 377 & cmt. a (Am. L. Inst. 1934). For defamation claims, the law of the place "where the defamatory statement is communicated" is the place of the wrong. *Id.* at Rule 5. Here, IINK is alleged to have communicated a series of defamatory statements about Plaintiffs to Feazel and Shanco. Given those parties' geographic locations, it is possible that the communications were received in Ohio, Maryland, Virginia, or some other location. Thus, there is no reason to believe that the MDFla would have any more familiarity with the applicable state law. And if Virginia defamation law governs, this court would be preferable to the MDFla. Thus, on balance, the interest of justice favors the EDVa over the MDFla.

In sum, Plaintiffs' choice of forum, the convenience of witnesses, and the interest of justice all favor the EDVa over the MDFla, while the convenience of the parties is in equipoise and therefore does not favor transfer. Thus, Philippe's claim against IINK should not be transferred. Because HetCo and IINK agreed to a forum selection clause in the MDFla, and because only a court in the MDFla can compel arbitration pursuant to those parties' arbitration agreement, HetCo's claims against IINK must be transferred. HetCo must accordingly be severed as a party to this action and transferred to the Middle District of Florida so that court may order arbitration.

While the result of such a determination is bifurcation of HetCo and Philippe's claims, the Supreme Court has instructed that courts must enforce an arbitration agreement even where the result is a bifurcated proceeding "because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20; *see also Dean Witter Reynolds, Inc.*, 470 U.S. at 218, 221 (the FAA "requires that [courts] rigorously enforce agreements to arbitrate, even if the result is 'piecemeal litigation.'"); *accord KPMG LLP v. Cocchi*, 565 U.S. 18, 26 (2011) (per curiam). However, independent resolution of HetCo and Philippe's defamation claims may risk inconsistent judgments. From the allegations in the complaint, it cannot be determined at this time whether IINK made independent or interconnected statements about HetCo and Philippe. As a result, supplemental briefing is necessary on whether staying Philippe's claim is appropriate.

## VI.

To summarize, six issues have been addressed by this Memorandum Opinion: (i) whether a valid arbitration agreement exists between both Plaintiffs and IINK; (ii) whether Plaintiffs' claims fall within the parameters of the arbitration clause; (iii) whether the arbitration agreement is unenforceable as an "infinite arbitration provision;" (iv) whether the FAA is unconstitutional in

light of the Seventh Amendment; (v) whether, if there is a valid and enforceable agreement to arbitrate, this court may compel arbitration; and (vi) whether any or all claims in this action should be transferred to the Middle District of Florida pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). The answer to those questions are (i) a valid arbitration agreement exists between HetCo and IINK but Philippe, a nonsignatory to the Agreement, cannot be bound to its arbitration clause; (ii) each of HetCo's claims falls within the scope of the Agreement; (iii) the arbitration clause is enforceable; (iv) there is no Seventh Amendment bar to the arbitrability of HetCo's claims; (v) this court lacks the power to compel arbitration as the Agreement specifies that arbitration is to occur in Tampa, Florida, outside of this district; and (vi) pursuant to 28 U.S.C. § 1404(a), HetCo's claims against IINK should be transferred to the Middle District of Florida, Tampa Division, so that court may order HetCo to arbitrate, but § 1404(a) does not warrant transfer of Philippe's claim. All claims by HetCo must accordingly be severed pursuant to Rule 21, Fed. R. Civ. P., with HetCo's claims transferred to the MDFla and Philippe's defamation claim retained in this District. In consequence, IINK's motion to compel transfer venue or, in the alternative, to compel arbitration and dismiss must be granted in part and denied in part.

An appropriate Order will issue.

The Clerk of the Court is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
January 3, 2024

T. S. Ellis, III
United States District Judge

39